IN THE UNITED STATES DISTRICT COURT
MIDDLE DISCTICT OF TENNESSEE

SANDY BRITO GONZALEZ, )
 )
        Plaintiff, )
 )
v. ) No.:_____
 )
AIMBRIDGE HOSPITALITY, LLC )
d/b/a EMBASSY SUITES, )
 )
        Defendant. )

## COMPLAINT

Plaintiff, Sandy Brito Gonzalez, for his cause of action states:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Sandy Brito Gonzalez, is a Citizen of the State of Tennessee currently residing at 813 Del Rio Pike, Apt. C4, Franklin, TN 37067.

2. Defendant, Aimbridge Hospitality, LLC is a Delaware limited liability company with its principal office located at 2500 Dallas Parkway, STE 600, Plano, TX 75093-4820. Defendant may be served through its registered agent for service of process, C T Corporation System, 800 S. Gay St., STE 2021, Knoxville, TN 37929-9710.

3. Jurisdiction is proper pursuant to 28 U.S.C. §1331 as this claim for discrimination is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended.

Venue is proper in the Middle District of Tennessee as this claim arises out of Plaintiff's employment at the Embassy Suites, Nashville Airport, 10 Century Boulevard, Nashville, TN 37214.

1

## FACTUAL ALLEGATIONS

4. Defendant, Ambridge Hospitality, LLC owns and operates a series of hotels, including the Embassy Suites, Nashville Airport, 10 Century Boulevard, Nashville, TN 37214.

5. Born in Cuba, Plaintiff is a Hispanic/Latino male and a member of a protected class.

6. On August 17, 2015 Plaintiff began his employment with Defendant as an evening shift maintenance engineer at the Airport Embassy Suits making $16 per hour.

7. Over the next several months Plaintiff performed his job admirably, earning two certificates of recognition from Hotel Management for "Great attitude that reflects in his work and living the Embassy Suites service statement" and the "Make a Difference" hotel medallion.

8. However, Plaintiff did begin to experience problems with his Supervisor, the Chief Engineer Lanny Dunlap. It became clear that Mr. Dunlap was prejudice against certain minorities. Mr. Dunlap even stated in front of Plaintiff that "I don't want blacks on my team." . Mr. Dunlap displayed an animus towards Plaintiff's ethnicity and country of origin. For example, Mr. Dunlap referred to other Hispanic employees in vulgar terms, and referred to Plaintiff as "Speedy Gonzalez, Andale! Andale!", "Janitor," "Castro," and "Fidel" in front of co-workers.

9. In November 2015 Plaintiff's scheduled was changed by Mr. Dunlap from Sunday – Thursday from 2:30 – 11:30pm, to Thursday – Monday, 2:30 – 11:30pm. He was also forced to work short-handed, often times being the only engineer on the schedule to cover 296 rooms, while the day shift typically had 4-6 engineers scheduled. Consequently, he often worked through breaks or worked off the clock to keep up. When he asked Mr. Dunlap to schedule him help on his shift but none was forthcoming.

2

10. While he worked alone on the evening shift Hotel Management often asked him to perform tasks outside of the scope of his job as an engineer. For example, Plaintiff was instructed to check the parking lot for dangerous or violent situations, and was sent to guest rooms to check for drug use and prostitution. Other engineers were not exposed to these potentially dangerous situations.

11. Lanny Dunlap changed Plaintiffs' schedule on short notice to accommodate the other non-Hispanic/Latina engineer's requests for time off for birthdays or holidays.

12   On December 22, 2015 Plaintiff attended an engineer meeting during which he was asked to voice any concerns he had with the hotel. Both Mr. Dunlap and the Human Resource Director, Megan Ray were present. Plaintiff explained that he felt it was unfair that he was scheduled alone at night to cover 296 rooms while the first shift often had 6 or more engineers. He further explained that as a result he missed many of his breaks. Mr. Dunlap told Plaintiff to be quiet. At the end of the meeting Ms. Ray asked Plaintiff: "How do you shave your chin that way." Plaintiff, who has a small thin beard, told her that it was natural and that was how it grows. In turn, Mr. Dunlap stated "It's a Latin landing strip on his face." A "landing strip" is a derogatory term for a woman's pubic hair. For the following weeks employees made numerous embarrassing and humiliating jokes about Plaintiff's facial hair.

13. On January 4, 2016 Plaintiff went to the Human Resource office and asked Megan Ray if he could be transferred to another hotel because he did not feel comfortable there anymore because of what he was experiencing. She informed him that she didn't know of any openings for his position. A few days later Mr. Dunlap approached Plaintiff and told him that Megan Ray told him that he (Plaintiff) had put in his one month notice on January 4, 2016. Plaintiff told Mr. Dunlap that was not true.

3

14. On January 14, 2016 Plaintiff reported to work for his regular shift and was called to Mr. Dunlap's office to meet with him and Megan Ray. When he arrived Megan Ray accused him of entering and sleeping in two rooms (Rooms 921 and 429) after he had clocked out. Plaintiff denied the accusation and maintained he had been home with his wife. In support of the accusation Megan Ray produced two lock reports which purportedly showed his key being used on the two room doors after his shift. She further stated that video showed him in the parking lot after hours and sneaking back into the hotel after his shift ended. Plaintiff explained that both rooms were accessed due to needed repairs, that he had personally moved the guests to different rooms, and that he had not slept in them or entered them after his shift. Plaintiff demanded to see the videos which did not show him or his car. Plaintiff explained that the clocks on the door must be inaccurate. To prove they were not Megan Ray and Mr. Dunlap brought him to room 429, one of the rooms in question, opened the door with his key, and then compared the door lock time and terminal time and they matched. Megan Ray became angry, told him the lock reports don't lie, gave him a copy of the lock reports, fired Plaintiff on the spot and had him escorted off the premises.

15. Plaintiff subsequently learned from the lock manufacturer that the door lock clock should be the same as the terminal clock because the transactions are the same. If the two times are different on the lock reports the door lock and terminal clocks need to be synced because one or both are inaccurate.

16. The lock reports for Room 429 shows that on January 11, 2016 the door lock clock was 2 hours and 1 minute ahead of the terminal clock. On the transaction relied upon by Defendant as proving after hour access by Plaintiff, Plaintiff's key was used at 11:25 pm (outside of Plaintiff's shift) on the door lock clock, but the terminal clock showed 9:23pm (within

4

Plaintiff's shift). Thus, Plaintiff actually entered the room over an hour and a half before his shift had ended to do repairs. Importantly, on January 13, 2016 the day before he was fired, the lock report also shows that Lanny Dunlap updated the door lock time to match the terminal clock. That is why the two times matched when they "checked" it with Plaintiff on January 14, 2016, and proves Defendant was aware of the discrepancy.

17. The lock report for Room 921 shows that on January 7, 2016, the day Defendant accused Plaintiff of entering the room after hours and sleeping, the door lock clock and terminal clock were off by one hour and 14 minutes, which again confirms Plaintiff only used his key during his shift.

18. Plaintiff only entered rooms 429 and rooms 921 during his shift and to either perform repairs and maintenance or help others perform repairs and maintenance. Defendant's reasons for terminating Plaintiff are demonstrably false and are pretext to mask discriminatory intent.

## ADMINISTRATIVE PREREQUISITES

19. On January 27, 2016 Plaintiff filed his charge of discrimination with the Equal Employment Opportunities Commission on the basis of race, sex, and national origin, charge number 494-2016-00639. On November 22, 2016 the EEOC issued its Notice of Right to Sue. (See Attached Exhibit A).

## COUNT I – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

20. Paragraphs 1 through 19 are incorporated herein by reference as though fully set forth.

21. Plaintiff, is a Hispanic/Latino male born in Cuba and is a member of a protected class. Defendant is an employer as that term is defined in the Act. Plaintiff was fully qualified for the position of maintenance engineer and was meeting all reasonable expectations of his employer with respect to his job performance. Plaintiff was subjected to a hostile work environment predicated on his race, national original and his gender created by his Supervisor, Lanny Dunlap and, in part, the H.R. Director Megan Ray. Ultimately, Plaintiff was terminated for reasons that are demonstrably false and which are merely pretext to mask Defendant's discriminatory intent.

22. Plaintiff has suffered damages due to the intentional discrimination of Defendant including back pay, front pay, and compensatory damages for humiliation, embarrassment and emotional trauma for which Defendant is liable.

WHEREFORE, premises considered, Plaintiff prays judgment be entered against Defendant for back pay, front pay, compensatory damages for his humiliation, embarrassment, and emotional trauma in an amount to be proven at trial, punitive damages, plus his attorney's fees and costs as provided in the Act.

Respectfully submitted,

MCCUNE ZENNER HAPPELL, PLLC

_____
MATHEW R. ZENNER (#018969)
5200 Maryland Way, Suite 120
Brentwood, TN 37027
Telephone: (615) 425-3476
Facsimile: (615) 251-6958
Email: mzenner@mzhlawfirm.com
Attorney for Plaintiff

6